# In the United States Court of Federal Claims

No. 17-335C (Filed: September 19, 2017)

| | |
|---|---|
| VANQUISH WORLDWIDE, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> THE UNITED STATES OF AMERICA, <br><br> Defendant. | Keywords: Contract Disputes Act; Subject Matter Jurisdiction; Submission of a Claim. |

*Michael D. Maloney*, Williams Mullen, Tysons, VA, with whom were *William A Wozniak*, Williams Mullen, and *Todd W. Miller*, Law Office of Todd W. Miller, Golden, CO, for Plaintiff.

*James W. Poirier*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, with whom were *Franklin E. White, Jr.*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, and *Chad A. Readler*, Acting Assistant Attorney General, for Defendant.

## OPINION AND ORDER

**KAPLAN, Judge.**

Plaintiff Vanquish Worldwide, LLC (Vanquish) held a contract with the United States Transportation Command (TransCom) to provide shipping and logistics services for the U.S. Army in Afghanistan. It alleges that it received a performance evaluation in connection with its work under the contract that was arbitrary, capricious, and unsupported by the facts. It therefore seeks a declaratory judgment vacating the performance evaluation and remanding the matter back to the agency.

The government has moved to dismiss Vanquish's complaint for lack of subject matter jurisdiction, claiming that Vanquish failed to submit a claim to the contracting officer for a final decision before filing suit in this court, as is required by the Contract Disputes Act (CDA), 41 U.S.C. §§ 7101–09. As discussed below, the Court agrees with the government that Vanquish's continuing correspondence with the agency about the evaluation never ripened into a claim. Accordingly, the government's motion is **GRANTED**, and Vanquish's complaint is dismissed without prejudice.

## BACKGROUND

### I.  Vanquish's Contract and the Performance Evaluation

As noted, between December 2014 and December 2015, Vanquish held a contract with TransCom to provide trucking services to the U.S. Army in Afghanistan. Compl. ¶ 1, ECF No. 1. TransCom terminated the contract for cause on January 22, 2016, after Vanquish failed to deliver the last twelve shipments under the contract. See id. ¶ 6. According to Vanquish, the shipments were not delivered because they were hijacked. See id. ¶ 4. The government eventually recovered the missing cargo in March 2016. See id. ¶ 9.

On January 29, 2016, the contracting officer (CO) entered a performance evaluation into the government-wide Contractor Performance Assessment Reporting System (CPARS). Id. ¶ 58; see also id. Ex. B, ECF No. 1-1. Based on the loss of the twelve shipments, the CO assigned Vanquish a rating of "Marginal" for both the "Quality" and "Management" evaluation factors. Compl. ¶¶ 58–59.

On February 26, 2016, Vanquish submitted detailed comments on the evaluation via CPARS. Id. ¶ 67; see also id. Ex. B. at 61–65.[1] It strongly disagreed with the CO's evaluation and, in particular, with his characterization of the twelve shipments as "lost" rather than stolen. See Compl. ¶ 67. In its comments, Vanquish also stated its belief that the CPARS evaluation should be "removed" and "request[ed] [that] all [its] evaluation area assessment ratings be raised to a 'Satisfactory' with all incorrect and misleading comments removed prior to the approval by the Reviewing Official." Id. Ex. B. at 65. Vanquish, however, inadvertently selected the "I concur with this evaluation" option at the conclusion of the comment submission process. See Compl. ¶ 68; id. Ex. B. at 65.

On March 3, 2016, Vanquish's Executive Vice President, Greg Guiney, sent an email to the CO informing him that Vanquish had selected the "I concur with this evaluation" option by mistake when it submitted its evaluation comments. Pl.'s Opp'n to Def.'s Mot. to Dismiss the Compl. (Pl.'s Mot.) Ex. A at 2–3, ECF No. 18-1. Mr. Guiney stated that Vanquish "need[ed] the ability to correct" the mistake and asked if the CO was "able to assist or what your recommendation is to proceed." Id.

A few weeks later, on March 16, 2016, Vanquish's outside counsel, Charles Lucy, sent an email to TransCom's counsel, John Harryman. Pl.'s Mot. Ex. C at 5, ECF No. 18-3. Mr. Lucy also copied the CO on the email. Id. The bulk of the email concerned demands for reprocurement costs that the CO had submitted to Vanquish following the contract's termination. See id. Mr. Lucy also noted, however, that Vanquish believed its CPARS rating was "unjustified" and that it "should be rescinded." Id. He closed the

---

[1] References to pagination in Vanquish's exhibits are to the ECF pagination located in the upper right-hand corner of the page.

email by stating that Mr. Harryman's "favorable consideration of the issues raised in this email is appreciated." Id.

The next day, March 17, 2016, the CO replied to Mr. Guiney's March 3, 2016 email. Pl.'s Mot. Ex. A at 2. He informed Mr. Guiney that he was "unable to send the CPAR[] back to [Vanquish] for further comment," but that he would "provide [Vanquish's] concerns to the Reviewing Official." Id.

Several days later, on March 21, 2016, the reviewing official, Lt. Col. Jarrett Moffitt, finalized the CPARS evaluation. Compl. Ex. B at 66–67. Lt. Col. Moffitt concurred with the "Marginal" ratings assigned by the CO and rejected Vanquish's explanations for the disappearance of the twelve shipments. Id. at 66. In particular, he observed that Vanquish's claim that the shipments were hijacked was "inaccurate" and that "[t]he Government, on its own accord, was able to recover the cargo after Vanquish declared it was a loss." Id. Lt. Col. Moffitt also stated that an "investigation revealed [that] the incident was caused by a contractor-subcontractor payment dispute." Id.

Lt. Col. Moffitt also noted that Vanquish had "request[ed] to change [its] concurrence from CONCUR to NON-CONCUR" and stated that "[a]lthough TRANSCOM was unable to re-open the CPAR for further editing," Lt. Col. Moffitt had applied the "CPARS business rules for contractor NON-CONCURRENCE." Id. at 65.

The following day, March 22, 2016, Mr. Lucy sent another email to TransCom's counsel. Pl.'s Mot. Ex. C at 3. He copied both the CO and Mr. Guiney on the email. Id. Mr. Lucy asserted that Lt. Col. Moffitt had changed the "underlying rationale" behind Vanquish's Marginal ratings and that this "should have triggered an additional opportunity for Vanquish to respond to the CPARS evaluation." Id. Further, Mr. Lucy opined that Vanquish "should have been allowed to review" the government's investigation of the incident and to "comment on its findings." Id. Mr. Lucy thus requested that Vanquish be allowed to "review the documents and investigation surrounding the . . . recovery of the 12 shipments[] so that [Vanquish] can submit its response," and stated that "the CPARS review and rating should be rescinded or suspended until Vanquish'[s] supplemental response can be considered." Id.

TransCom's counsel responded on March 24, 2016. Id. at 2. He informed Mr. Lucy that although the investigation had not been completely finalized, "the interviews and fact gathering" were complete. Id. Further, and in any event, TransCom's counsel lacked "the authority to release the investigation" to Vanquish. Id. He did not mention Mr. Lucy's request to rescind or suspend the CPARS evaluation other than to say that his "assessment [wa]s that all of the comments in the CPAR were based largely on communications made by" Vanquish in performing the contract. Id.

3

**II.     This Action**

Vanquish filed its complaint on March 10, 2017.[2] ECF No. 1. It alleges that the CPARS evaluation is "unreasonable, unfair, inaccurate, arbitrary, capricious, inconsistent with FAR 42.15, inconsistent with the terms of the Contract, and an abuse of the Contracting Officer's discretion." Id. ¶ 12. It seeks a declaratory judgment vacating the evaluation and remanding the matter to TransCom to perform a new evaluation. Id. at 29–30.

On May 22, 2017, the government moved to dismiss the complaint for lack of subject matter jurisdiction, contending that Vanquish failed to submit a claim to the CO before filing suit in this Court as required by the CDA. ECF No. 17. Vanquish filed a response on June 22, 2017. ECF No. 18.

**DISCUSSION**

**I.     Standards for Motions to Dismiss Under Rule 12(b)(1) of the Rules of the Court of Federal Claims**

Whether this Court has subject-matter jurisdiction is a threshold matter, and, if no jurisdiction exists, the Court must order dismissal without proceeding further. See PODS, Inc. v. Porta Stor, Inc., 484 F.3d 1359, 1365 (Fed. Cir. 2007) (citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94–95 (1998)). In deciding a motion to dismiss for lack of subject matter jurisdiction, the court accepts as true all undisputed facts in the plaintiff's complaint and draws all reasonable inferences in favor of the plaintiff. Trusted Integration, Inc. v. United States, 659 F.3d 1159, 1163 (Fed. Cir. 2011). If subject matter jurisdiction is challenged, however, the plaintiff cannot rely merely on allegations in the complaint, but must instead bring forth relevant, competent proof to establish jurisdiction. Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988). The party invoking a court's jurisdiction bears the burden of establishing it, and must ultimately do so by a preponderance of the evidence. Id.; see also Rocovich v. United States, 933 F.2d 991, 993 (Fed. Cir. 1991).

**II.     The Court's Jurisdiction Over CDA Claims**

    **A.     The Tucker Act**

Pursuant to the Tucker Act, the United States Court of Federal Claims may "render judgment upon any claim against the United States founded . . . upon any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1) (2012). Subsection (a)(2) of section 1491 further grants the Court of Federal Claims "jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under section

---

[2] Vanquish has also filed another action in this Court arising out of the same contract, in which it contests the government's termination of the contract for cause. See Compl., Vanquish Worldwide, LLC v. United States, No. 17-96 (Fed. Cl. Jan. 23, 2017), ECF No. 1.

4

7104(b)(1) of title 41"—that is, the CDA—"including a dispute concerning termination of a contract, rights in tangible or intangible property, compliance with cost accounting standards, and other nonmonetary disputes on which a decision of the contracting officer has been issued under section 6 of that Act." Id. § 1491(a)(2).

## B. The Contract Disputes Act

The CDA covers all claims based upon "any express or implied contract . . . made by an executive agency for—(1) the procurement of property, other than real property in being; (2) the procurement of services; (3) the procurement of construction, alteration, repair, or maintenance of real property; or (4) the disposal of personal property." 41 U.S.C. § 7102(a) (2012). Under the CDA, "procurement" means "the acquisition by purchase, lease or barter, of property or services for the direct benefit or use of the Federal Government." New Era Constr. v. United States, 890 F.2d 1152, 1157 (Fed. Cir. 1989) (quotation and emphasis omitted).

The CDA sets forth its own jurisdictional requirements. See M. Maropakis Carpentry, Inc. v. United States, 609 F.3d 1323, 1327–28 (Fed. Cir. 2010); Dalton v. Sherwood Van Lines, Inc., 50 F.3d 1014, 1017 (Fed. Cir. 1995) ("When the [CDA] applies, it provides the exclusive mechanism for dispute resolution; [it] was not designed to serve as an alternative administrative remedy, available at the contractor's option."). In particular, the CDA states that a contractor may bring an action de novo in federal court "within 12 months from the date of receipt of a contracting officer's decision." 41 U.S.C. § 7104(b)(3)–(4). Thus, for the Court of Federal Claims to possess jurisdiction, the contractor must first submit a valid claim to the contracting officer and receive the contracting officer's final decision on that claim.[3] M. Maropakis Carpentry, 609 F.3d at 1327–28.

The definition of "claim" for purposes of the CDA derives from the FAR, which implements the CDA. See id. at 1327. And FAR 2.101 provides, in pertinent part, that the term "claim" means "a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract." Id.; see also FAR 52.233-1 (setting forth, in a standard contract clause, the same definition of "claim").

In interpreting the CDA, the Federal Circuit has explained that "a valid claim under the CDA must contain 'a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim,'" but that it "need not take any particular form or use any particular wording." Northrop Grumman Computing Sys., Inc. v. United States, 709 F.3d 1107, 1112 (Fed. Cir. 2013) (quoting Contract Cleaning Maint., Inc. v. United States, 811 F.2d 586, 592 (Fed. Cir. 1987)); see also Reflectone, Inc. v. Dalton, 60 F.3d 1572, 1575–76 (Fed. Cir. 1995). Instead, "[a]ll that is required is

---

[3] If the CO does not respond to the claim, it is deemed denied sixty days after submission. See 41 U.S.C. § 7103(f)(1)–(2), (5).

that the contractor submit in writing to the contracting officer a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim." Northrop Grumman Computing Sys., 709 F.3d at 1112 (quoting Contract Cleaning Maint., 811 F.2d at 592).

Further, "[b]esides meeting the FAR definition of a claim, the CDA also requires that all claims be submitted to the contracting officer for a decision." James M. Ellett Constr. Co. v. United States, 93 F.3d 1537, 1543 (Fed. Cir. 1996); see also M. Maropakis Carpentry, 609 F.3d at 1327–28. The contractor is not required to make a single, "explicit request for a final decision." James M. Ellett Constr., 93 F.3d at 1543. Rather, "as long as what the contractor desires by its submissions is a final decision, that prong of the CDA claim test is met." Id. (quoting Transamerica Ins. Corp. ex rel. Stroup Sheet Metal Works v. United States, 973 F.2d 1572, 1576 (Fed. Cir. 1992), overruled on other grounds by Reflectone, Inc., 60 F.3d at 1582–83).

### III. Application to This Case

The Court concludes that Vanquish has not met the CDA's jurisdictional requirements. It so concludes because the correspondence between Vanquish and the agency, read as a whole, reflects a continuing dialogue about Vanquish's performance rating that never ripened into a request for a final decision.

Thus, Vanquish responded to the agency's proposed (draft) evaluation by entering detailed comments into CPARS. A few weeks later, while the review process was ongoing, Mr. Lucy sent a March 16, 2016 email to agency counsel (with a copy to the CO) which included an extended discussion of the government's demands for reprocurement costs, and also referred in passing to Vanquish's belief that its CPARS rating was "unjustified" and that it "should be rescinded." See Pl.'s Mot. Ex. C at 5. Next, on March 22, 2016, the day after the reviewing official finalized the ratings, Mr. Lucy sent the agency's counsel an email that was focused on what he called a "rush to judgment," which he claimed had denied Vanquish a fair opportunity to provide input into its rating. See id. at 3. In that email, Mr. Lucy asserted that the reviewing official had based his decision on a rationale that was different from the one that had been the basis of the proposed rating. Id. (observing that that "the underlying rationale for the poor CPARS rating, i.e., missing shipments, is no longer valid, forcing the reviewing official to come up with a whole new rationale, i.e, [sic] Vanquish did not try hard enough to recover the shipments"). He argued that "[t]his should have triggered an additional opportunity for Vanquish to respond to the CPARS evaluation, but none has been offered." Id.

When raising these concerns about the fairness of the process in his March 22, 2016 email, however, Mr. Lucy did not demand that the marginal rating be permanently withdrawn. Instead, he "reiterate[d] [Vanquish's] request to review the documents and investigation surrounding the mysterious recovery of the 12 shipments, so that it can submit its response to the new information considered by the reviewing official, Lt Col Moffitt." Id. He then requested only a temporary reprieve while an "additional review process is underway," stating that "the CPARS review and rating should be rescinded or suspended until Vanquish'[s] supplemental response can be considered." See id.

In short, Mr. Lucy's emails did not reflect that Vanquish was requesting a final decision from the CO or that it was demanding a permanent withdrawal of the performance rating. Instead, the emails appeared to be focused on flaws in the process, with the purpose of giving Vanquish another opportunity to review additional material and make additional comments that it hoped would change the rating decision. The agency therefore would not have had notice, based on Mr. Lucy's emails, that Vanquish was asserting an entitlement to the permanent withdrawal of the rating as a matter of right.

Vanquish's reliance on this Court's decision in Federal Contracting, Inc. v. United States (FCI), 128 Fed. Cl. 788 (2016) for a contrary conclusion is misplaced. In that case, the contractor sent multiple letters to the CO after it received its interim rating, one of which "formally request[ed]" the withdrawal of the performance assessment. Id. at 791 (alteration in original). Unlike Mr. Lucy's email, which clearly contemplated further dialogue between Vanquish and the agency, the letters in FCI were unequivocal and presented a demand for relief as a matter of right. See id. at 797. Indeed, the agency so read them, and notified the contractor in a show cause order that its requests were denied, after which it formally entered a final rating into CPARS a week later. See id. at 791–92. On the particular facts of FCI, requiring the contractor to make another demand for relief after the agency formally designated the performance rating "final" would have been a redundancy.

## CONCLUSION

For the reasons discussed above, the Court concludes that Vanquish did not submit a valid claim to the CO for a final decision as required by the CDA. The Court therefore lacks jurisdiction over Vanquish's claim. Accordingly, the government's motion to dismiss is **GRANTED**, and Vanquish's complaint is **DISMISSED** without prejudice. The Clerk is directed to enter judgment accordingly. Each side shall bear its own costs.

**IT IS SO ORDERED.**

s/ Elaine D. Kaplan  
ELAINE D. KAPLAN  
Judge